UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOO CHANH SAEPHANH, | ) Case No.: 1:14-cv-00579 - JLT |
| Plaintiff, | ) ORDER DIRECTING ENTRY OF JUDGMENT IN |
| v. | ) FAVOR OF DEFENDANT, CAROLYN W. COLVIN, |
| | ) ACTING COMMISSIONER OF SOCIAL SECURITY, |
| CAROLYN W. COLVIN, | ) AND AGAINST PLAINTIFF, FOO CHANH |
| Acting Commissioner of Social Security, | ) SAEPHANH |
| Defendant. | ) |

Plaintiff Foo Chanh Saephanh asserts he is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the credibility of his subjective complaints. The Court finds the ALJ identified clear and convincing reasons for rejecting Plaintiff's credibility and, therefore, the ALJ's decision is **AFFIRMED**.

**BACKGROUND**

Plaintiff filed applications for benefits, alleging disability beginning March 1, 2011. (Doc. 9-3 at 12.) The Social Security Administration denied his claims initially and upon reconsideration. (Doc. 9-5 at 2-15.) Plaintiff requested a hearing, and testified before an ALJ on November 16, 2012. (Doc. 9-3 at 26.) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on December 12, 2012. (*Id.* at 12-19.) The Appeals Council denied Plaintiff's

request for review. (*Id.* at 2-4.) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.    Relevant Medical Evidence**

In March 2011, Plaintiff complained of "leg, arm pain [and] swelling." (Doc. 9-8 at 20.) He described the pain as a "burning, stinging" sensation that was an "8" on a scale of 1 to 10. (*Id.* at 19.) Plaintiff said he had not been taking medication for his pain, and was not doing anything for pain relief. (*Id.* at 19-20.)

In April 2011, Plaintiff reported he had pain in his arms and legs with movement. (Doc. 9-8 at 18.) He described the pain as a "10" on a scale of 1 to 10. (*Id.*) Similarly, on May 5, 2011, Plaintiff reported he had "hot burning" pain in his knees, which was a "10" on a scale of 1 to 10. (*Id.* at 17.)

On May 26, 2011, Plaintiff again reported he had pain in his arms and legs, which he described as a "5" on a scale of 1 to 10. (*Id.* at 14.) In addition, Plaintiff reported that he felt "weaker" and had "less strength." (*Id.*) Upon physical examination, Plaintiff's strength in his upper extremities was "4/5" bilaterally. (*Id.*)

On June 8, 2011, Plaintiff was admitted to Mercy Medical Center, complaining that for three days he had difficulty swallowing, abdominal pain, "generalized weakness [and] body aches." (Doc. 9-8 at 44, 52.) In addition, Plaintiff reported he had "weakness in the extremities and trouble in getting up from [a] chair." (*Id.* at 52.) Dr. Thomas Fife noted Plaintiff had a history of diabetes mellitus- type 2, hypertension, and dermatomyositis. (*Id.* at 59.) Dr. Meghal Parikh, a consulting rheumatologist, noted Plaintiff was "not able to get up from a sitting position because of weakness in the lower extremities." (*Id.* at 53, 66.) According to Dr. Parikh, Plaintiff's "[b]ilateral upper extremity strength

[was] at least 3-4/5, slightly stronger on the left compared to [the] right." (*Id.* at 53.) The doctor diagnosed "dysphagia, likely secondary to dermatomyositis" and dehydration, which were resolved by the time he was discharged on June 10, 2011. (*Id.* at 66.) Plaintiff was advised to follow up with Dr. Parikh regarding the dermatomyositis. (*Id.* at 67.)

On June 23, 2011, Plaintiff continued to report that his arms and legs ached and described the pain as an "8-9" on a scale of 1 to 10. (Doc. 9-8 at 13.) On June 27, he reported the pain had decreased, describing it as "6." (*Id.* at 12; Doc. 9-9 at 18.)

In July 2011, Plaintiff reported his pain was a "5" on the scale of 1 to 10. (Doc. 9-9 at 16.) Dr. Parikh noted that Plaintiff "complain[ed] of limb girdle weakness, particularly in the lower extremities more compared to the upper extremities." (Doc. 9-8 at 87.) Dr. Parikh observed Plaintiff was "ambulating independently" and had a stable gait, although he had "mild difficulty in getting up from [a] chair." (*Id.*) After giving Plaintiff a musculoskeletal exam, Dr. Parikh determined: "Shoulder girdle strength is about 4 out of 5. Pelvic girdle strength is about 3 to 4 out of 5. He is able to extend his knee without any problem. Grip strength is normal. Small joints of hand, wrist, elbow, should, [and] ankle … are without gross synovitis." (*Id.*)

On August 6, 2011, Dr. Parikh observed that Plaintiff was "ambulating independently without aid or assistance." (Doc. 98 at 85.) Dr. Parikah determined Plaintiff's grip strength was "preserved." (*Id.*) Plaintiff's shoulder girdle strength and pelvic girdle strength remained the same. (*Id.*) Further, Dr. Parikah observed that Plaintiff was "ambulating independently without aid or assistance." (*Id.*) Again, Dr. Parikah determined Plaintiff's grip strength was "preserved;" his shoulder girdle strength was "about 4/5;" and his "pelvic girdle strength [was] about 3-4/5." (*Id.*)

In September 2011, Plaintiff complained "of bilateral knee weakness and trouble in ambulation." (Doc. 9-8 at 84.) Plaintiff told Dr. Parikh that he "walk[ed] about two to three blocks twice a week." (*Id.* 84.) In addition, Plaintiff reported that he was "independent in activities of daily living and instrumental activities of daily living." (*Id.*) Dr. Parikh determined that Plaintiff's grip strength was preserved, and his "[s]mall joints of hand, wrist, elbow, knee and ankle [were] without gross synovitis." (*Id.*)

Dr. Roger Wagner performed a consultative internal medicine evaluation on October 1, 2011.

(Doc. 9-8 at 93.) Dr. Wagner noted Plaintiff reported he "had diabetes mellitus type 2 for about six months," but he did not check his blood sugars. (*Id.*) In addition, Plaintiff complained of "pain in his knees, low, and vague pain elsewhere." (*Id.*) Plaintiff said he was able to "walk 1-2 blocks and [was] stopped by knee pain;" could "sit for about two hours before he nee[ed] to get up and move around;" and he had "difficulty getting up from a lying position due to his morbid obesity." (*Id.*) Further, Plaintiff told Dr. Wagner that "he perform[ed] his own activities of daily living and walks for exercise;" he did "only light cleaning;" and he was able to "cook for himself if necessary." (*Id.* at 94.)

Dr. Wagner observed Plaintiff "was easily able to get up out of a chair in the waiting room, pushing up on the arm of the chair without any problems." (Doc. 9-8 at 94.) Dr. Plaintiff also observed:

> He was able to walk at a normal pace back to the exam room without assistance. He sat completely through the entire history taking. He was easily able to get on and off the exam table and easily able to bend over at the waste and take his shoes off. However, he stated that he was not able to take his socks off. He appeared to have slight discomfort when attempting to bend over but he had an enormous amount of pannus between his arms and legs preventing him from doing this as well.

(*Id.*) In addition, Plaintiff "was able to walk on his heels and toes" and his straight-leg raising tests were negative. (*Id.* at 96.) Dr. Wagner determined Plaintiff had "1+ crepitus" in his knees, "1 to 2+ edema in the left leg from the mid calf downward," and "some slight swelling in the right leg." (*Id.* at 96.) Dr. Wagner found "no swelling, no tenderness, no effusions, and no redness or heat in any of [his] joints." (*Id.*) According to Dr. Wagner, Plaintiff's strength was "5/5" in his arms and legs, and some of the joint pain—particularly in Plaintiff's legs—could be attributed to Plaintiff's morbid obesity. (*Id.*) Dr. Wagner concluded Plaintiff did not have any limitations on standing, sitting, or walking with normal breaks; but recommended Plaintiff "avoid climbing and balancing on ladders or scaffolds." (*Id.*)

Dr. R. Betcher reviewed Plaintiff's medical records on November 14, 2011. (Doc. 9-4 at 17.) Dr. Betcher noted Plaintiff's symptoms "had markedly improved" with treatment, and his "motor strength [was] back to normal." (*Id.*) Therefore, Dr. Bectcher determined Plaintiff was able to perform medium work.[1] (*Id.*)

On January 26, 2012, Plaintiff reported he did not have any pain, but felt "muscle weakness."

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

(Doc. 9-9 at 15, 64.) Plaintiff again said that he did not have pain on January 31, 2012. (*Id.* at 14, 63.)

Plaintiff reported he was doing "good" and had no new complaints in February 2012. (Doc. 9-9 at 13, 62.) Dr. Parikh noted that Plaintiff complained of "pain over bilateral pectoral area," and he had "[m]oderate trouble in getting up from [a] chair." (*Id.* at 60.) According to Dr. Parikh, Plaintiff' grip strength was "4 out 5," his shoulder girdle strength and pelvic girdle strength were "3 to 4 out of 5; and his shoulder flexion was "only up to 90 degrees." (*Id.*)

On February 27, 2012, Dr. De La Rosa reviewed Plaintiff's medical records, and affirmed the assessment of Dr. Betcher that Plaintiff was able to perform medium work. (Doc. 9-4 at 28.)

On March 10, 2012, Plaintiff said he was "still struggling in getting up and walking." (Doc. 9-9 at 54.) Dr. Parikh observed that Plaintiff exhibited "moderate difficulty while getting up from [a] chair or [the] exam table." (*Id.*) In addition, Dr. Parikh noted Plaintiff had "trouble in overhead range of motion and lifting hip girdle." (*Id.*) Dr. Parikh referred Plaintiff to physical therapy for an "evaluation and treatment for bilateral lower and upper extremity weakness." (*Id.*)

In April 2012, Plaintiff said he was "still weak" and he had a "burning sensation." (Doc. 9-9 at 48.) He said he had "trouble with ambulation" and could not "stand up without support." (*Id.* at 49.) Plaintiff told Dr. Parikh that he "occasionally uses a walker at home and tends to stumble from time to time." (*Id.*) Dr. Parikh "strongly advised [Plaintiff] to keep an appointment for physical therapy." (*Id.*)

Plaintiff continued to report pain in July and August 2012, describing it as a 6-7 on a scale of 1 to 10. (Doc. 9-9 at 42-43.)

**B.     Administrative Hearing Testimony**

On November 16, 2012, Plaintiff testified with the assistance of an interpreter at a hearing. (Doc. 9-3 at 26.) Plaintiff reported that he had a sixth-grade education from Laos, and studied English for "a couple years" once he arrived in the United States. (*Id.* at 29.) Plaintiff said he could read and speak English "but not very good," so he wanted the interpreter to help him communicate with the judge. (*Id.* at 29-30.)

Plaintiff reported he worked from a production line from 1997 to 1999 and built microwaves for a company from 1999 to 2008. (Doc. 9-3 at 30.) He said these jobs required Plaintiff to lift "[b]etween 50 to 100 pounds." (*Id.*) In addition, Plaintiff reported that from 1999 to 2008 he worked building

microwaves. (*Id.*) He believed he was no longer able to work because he had poor vision, "weak muscle," and his "body [was] not strong anymore." (*Id.*) Further, Plaintiff said he had swelling and pain in his face, legs, right shoulder, and both biceps. (*Id.* at 31-32.) On a scale of 1 to 10, with 10 "so bad that you go to the hospital," Plaintiff said his pain was a "seven" without medicine and a "five or four" with his medicine. (*Id.* at 33.)

Plaintiff said he had "trouble bending down" and "trouble walking," and he used a crutch to walk into the hearing room. (Doc. 9-3 at 33-34.) He reported that he used the crutch for "almost every occasion," which he got it from a cousin because it was not prescribed by a doctor. (*Id.*) Plaintiff estimated he was able to walk "one block" without taking a break, and "stand for about an hour." (*Id.* at 34-35.) He said he had no problems with sitting, but had difficulty standing from a seated position. (*Id.* at 35.) Also, Plaintiff believed he was only able to lift "two to three pounds." (*Id.*)

He testified that in a typical day, he would take a "little walk, like maybe a block or two," and then watch television. (Doc. 9-3 at 37.) Plaintiff said he shopped at a grocery store with electronic scooters, but could no longer cook. (*Id.*) Further, Plaintiff reported he did not perform any chores around the house, such as sweeping, mopping, or dusting. (*Id.* at 38.)

## C.     The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the alleged onset date of March 1, 2011. (Doc. 9-3 at 14.) Second, the ALJ found Plaintiff "has the following severe impairments: obesity, diabetes, hypertension, and dermatomyositis." (*Id.*) These impairments did not meet or medically equal a listed impairment. (*Id.* at 14-15.) Next, the ALJ determined:

> [Plaintiff] has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk 6 hours, and six hours [in an] 8-hour workday, but he should never climb ladders, ropes, or scaffolds. In addition, he must avoid all exposure to unprotected heights[.]

(*Id.* at 15.) With this residual functional capacity ("RFC"), the ALJ found Plaintiff was able to perform his past relevant work as a small products assembler, as well as "other jobs that exist in significant numbers in the national economy." (*Id.* at 17.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 18-19.)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues that "[t]he ALJ failed to articulate legally sufficient reasons to reject the testimony of Foo Chanh Sephanh." (Doc. 12 at 9.) On the other hand, Defendant argues the ALJ's credibility determination was proper and is supported by substantial evidence in the record. (Doc. 17 at 5-9.)

When evaluating a claimant's credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Next, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility. *Id.* at 1036. In this case, the ALJ determined Plaintiff's "medically-determinable impairments can reasonably be expected to produce his alleged symptoms." (Doc. 9-3 at 16.)  However, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of [his] symptoms are not credible." (*Id.*)

An adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Factors that may be considered include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  To support a credibility determination, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Here, the ALJ considered inconsistencies in Plaintiff's statements and the objective medical record, finding "[t]he extent of [Plaintiff's] subjective complaints is not supported by the medical evidence of record and his credibility is diminished because of inconsistent statements and unsupported

allegations." (*See* Doc. 9-3 at 17.) The Ninth Circuit has determined these are relevant factors in assessing the credibility of a claimant. *See, e.g., Fair*, 885 F.2d at 603; *Thomas*, 278 F.3d at 958-59.

*Inconsistent statements*

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In this case, the ALJ noted Plaintiff made inconsistent statements at the hearing compared with those made to the physician. For example, the ALJ observed that Plaintiff "testified and reported not cooking or doing any household chores," but also reported to Dr. Wagner that he was able to do "light cleaning and can cook for himself if necessary." (Doc. 9-3 at 17, citing Doc. 9-7 at 16-17.) Further, the ALJ noted that Plaintiff said he had "difficulty walking," but told Dr. Wagner that he "walked 2 to 3 blocks twice a week." (*Id.*) Thus, the ALJ identified inconsistencies in Plaintiff's testimony and actions, which support the adverse credibility determination.

*Inconsistencies with the medical record*

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis

to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible"). Here, the ALJ found the medical record conflicted with Plaintiff's testimony concerning his ability to lift weights, walk, and bend. (Doc. 9-3 at 16-17.)

Specifically, the ALJ noted Plaintiff "testified as to only being able to lift 2 to 3 pounds because of muscle weakness," although testing by Dr. Wagner should Plaintiff had "full motor strength and normal muscle bulk and tone in the extremities." (Doc. 9-3 at 16, citing Doc. 9-8 at 96.) In addition, the ALJ noted that contrary to Plaintiff's testimony that he had "difficulty walking and bending down," Dr. Wagner observed that Plaintiff "ambulated with a normal gait . . . and was easily able to bend over at the waist and take his shoes off." (*Id.* at 17, citing Doc. 9-8 at 93-97.) Further, the ALJ noted: "Mr. Saephanh testified to having difficulty getting up from a sitting position, but that is inconsistent with Dr. Wagner's report that he was able to easily get up out of a chair and got on and off the examination table without difficulty." (*Id.*, citing Doc. 9-8 at 94.)

On the other hand, Plaintiff asserts the medical record "supports [his] testimony." (Doc. 12 at 8.) Significantly, however, many of the records identified by Plaintiff merely contain statements Plaintiff made to physicians. For example, Plaintiff asserts the record supports his "testimony that he has trouble walking and bending," but does not identify any testing related to the strength of his knees or legs. Rather, Plaintiff cites treatment notes indicating Plaintiff "*complains* of bilateral knee weakness and trouble in ambulation." (Doc. 9-8 at 84.) Similarly, Plaintiff identifies records wherein he reported difficulty getting up from a seated position. (*See* 12 at 8, citing Doc. 9-8 at 52-53.) Although Plaintiff reports that an "examination of the knee revealed bilateral 1+ crepitus and 1+ and 2+ edema in the left leg" (Doc. 12 at 8), there are no physicians' opinions explaining these findings or how they relate to Plaintiff's claim of disability.

Nevertheless, the ALJ identified specific medical evidence—including observations of a physician—that undermined the credibility of Plaintiff's complaints. This is supports an adverse credibility determination. *See Greger*, 464 F.3d at 972; *see also Matney v. Sullivan*, 981 F.2d 1016,

1019 (9th Cir. 1992) ("if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

## VI. Conclusion and Order

For the reasons set forth above, the Court finds, the ALJ carried his burden to articulate clear and convincing reasons for rejecting Plaintiff's credibility, which were "sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958. Because the ALJ applied the proper legal standards, the conclusion that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Foo Chanh Saephanh.

IT IS SO ORDERED.

Dated:   **June 9, 2015**                         **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE